IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

NICKLESS R. WHITSON,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Petitioner,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀NO. 3:18-cv-00833
v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀JUDGE RICHARDSON
UNITED STATES OF AMERICA,⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀Respondent⠀⠀⠀⠀⠀⠀⠀⠀)

## <u>MEMORANDUM OPINION</u>

Petitioner Nickless R. Whitson, an inmate at the United States Penitentiary Pollock, has

filed a *pro se* petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct an allegedly

illegal sentence imposed by this Court. (Doc. No. 1, "Petition"). Thereafter, the Court appointed

counsel for Petitioner, and Petitioner's counsel filed an amended petition, which adopted all

arguments made in the original Petition, and supplemented Petitioner's arguments as to one of his

asserted grounds for relief. (Doc. No. 10, "Amended Petition"). The Government has responded

in opposition to both petitions (Doc. No. 12, "Response"), and Petitioner, through counsel, has

filed a reply (Doc. No. 18, "Reply"). For the following reasons, the Petition and Amended Petition

are DENIED in part and GRANTED in part.

## BACKGROUND

### I. Procedural Background

On January 19, 2012, a federal grand jury in the Middle District of Tennessee charged

Petitioner (in case no. 3:12-cr-00013) and numerous co-defendants (including Manila

Vichitvongsa) in an eight-count indictment (Doc. No. 12-1, "Indictment").[1] The Indictment was based largely, though not exclusively, on two different armed robberies (the "Lavergne robbery" and "Elmwood robbery"). Specifically, Petitioner was charged: in Counts One and Five with conspiracy to commit Hobbs Act robbery (namely, the Lavergne robbery and the Elmwood robbery, respectively) in violation of 18 U.S.C. §§ 1951 and 2; in Counts Two and Six with using, carrying, and possessing a firearm in furtherance of a crime of violence (namely the Hobbs Act robberies charged respectively in Counts One and Five), in violation of 18 U.S.C. § 924(c); in Count Three with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846; in Counts Four and Eight with using, carrying, and brandishing a firearm during and in relation to a federal drug trafficking crime (namely, the drug conspiracies charged respectively in Counts Three and Seven), in violation of 18 U.S.C. § 924(c); and in Count Seven with conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846. Petitioner proceeded to trial and on November 18, 2014 was found guilty by a jury on all eight counts. (Doc. No. 12-4). The then-assigned district judge, the Honorable Todd Campbell, sentenced Petitioner to 1,252 months. (Doc. No. 10-2).

Petitioner appealed his conviction and raised five separate challenges to his conviction. *See United States v. Whitson*, 664 F. App'x 503 (6th Cir. 2016). The Sixth Circuit rejected all of Petitioner's challenges except for one: whether Petitioner's convictions on the charged Section 924(c) counts constituted a violation of the double jeopardy clause of the Fifth Amendment. *Id*. at 507. The Sixth Circuit explained:

> The government and Whitson agree that two of his firearms convictions violated the Double Jeopardy Clause in light of [*United States v. Vichitvongsa*, 819 F.3d 260, 266–70 (6th Cir. 2016]. The jury convicted Whitson on four firearm charges, two for the LaVergne robbery and drug conspiracies and two for the Elmwood robbery and drug conspiracies. But because Whitson "chose to use a

---

[1] Unless indicated otherwise, citations herein are to docket entries made in the instant (civil) case, rather than to docket entries in Petitioner's underlying criminal case (case no. 3:12-cr-00013).

firearm once during each robbery to simultaneously further two conspiracies," the district court should have "dismiss[ed] one of defendant's § 924(c) counts for each robbery" and drug conspiracy set. *Vichitvongsa*, 819 F.3d at 268, 270. Consistent with the government's confession of error, we vacate two of Whitson's § 924(c) convictions, either count 2 or 4 (the LaVergne set) plus either count 6 or 8 (the Elmwood set). "[T]he proper penalties are the same given § 924(c)'s mandatory term (regardless of which two of the four counts are vacated)," making it appropriate to "remand to the district court for the limited purpose of entering a revised judgment and sentence consistent with this opinion." *Id.* at 270; 18 U.S.C. § 924(c)(1)(A)(1), (c)(1)(C)(1).

> For these reasons, we reverse and vacate two of Whitson's § 924(c) convictions, remand for entry of a revised judgment and sentence, and affirm the rest of the district court's judgment.

*Id.* at 507. Thus, the court issued a limited remand, instructing the district court to dismiss either Counts Two or Four and to dismiss either counts Six or Eight, and also enter a revised sentence and judgment accordingly. On February 24, 2017, the Sixth Circuit issued its mandate on this appeal. (Doc. No. 12-6). The United States Supreme Court denied Petitioner's writ of certiorari on May 30, 2017. (Doc. No. 12-8).

On remand for entry of an amended judgment, the Court, consistent with the recommendation and concurrence of the parties, (Case No. 3:12-cr-00013, Doc. Nos. 1047, 1048), vacated Counts Four and Eight of the Indictment, charging respective violations Section 924(c) which were based upon the underlying drug conspiracies charged in Counts Three and Seven. (Case No. 3:12-cr-00013, Doc. No. 1047). On October 5, 2017, the Court entered the Amended Judgment whereby Defendant was sentenced to 652 months' imprisonment followed by five years of supervised release. (Doc. No. 10-3). Defendant did not appeal the Amended Judgment. On October 16, 2017, the Court entered the Second Amended Judgment, which did not amend the sentence imposed in the Amended Judgment but instead merely corrected a clerical error. (Doc. No. 12-9).

## II. The Instant Petitions

On September 4, 2018, Petitioner filed his *pro se* Petition (Doc. No. 1), supported by a supporting memorandum (Doc. No. 2, "Memorandum"), asserting that his convictions and sentences should be vacated on the following grounds:

(1) Petitioner's convictions on Counts One and Five of the Indictment for conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951 and § 2, violated the Ex Post Facto Clause of the United States Constitution as *Taylor v. United States*, 136 S. Ct. 2074 (2016) was used to decide his direct appeal. (Doc. No. 1 at 4, "Ground One");

(2) Petitioner's convictions on Counts Two and Six violate the Due Process Clause of the United States Constitution as such convictions rest on the unconstitutionally vague residual clause of 18 U.S.C. § 924(c). (Doc. No. 1 at ¶ 9(f); Doc. No. 10 at 1-9, "Ground Two");

(3) Petitioner's convictions on Counts Three (conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846) and Seven of the Indictment (conspiracy to distribute marijuana, in violation of 21 U.S.C. § 846) should be vacated as there was insufficient evidence of the alleged conspiracies. (Doc. No. 1 at 7, "Ground Three");

(4) All counts of conviction should be vacated as the Government withheld agreed upon *Brady*, *Jencks*, and *Giglio* material and falsified search warrant affidavit and warrants and presented falsified evidence and perjured testimony to obtain probable cause leading to the search of Petitioner's residence. (Doc. No. 1 at 8, "Ground Four");

(5) The district court erred in denying Petitioner's motion to suppress and for a *Franks* hearing, and his appellate counsel failed to raise this issue on direct appeal on his direct appeal. (Doc. No. 1 at 9, "Ground Five");

(6) The district court erred in denying Petitioner's motion to dismiss Counts Two, Four, Six, and Eight of the Indictment, as these counts were duplicitous and failed to clearly establish notice of the criminal charges, and his appellate counsel failed to raise this issue on direct appeal on his direct appeal. (Doc. No. 1 at 10, "Ground Six");

(7) Petitioner should be resentenced in light of "*Dean v. United States*, No. 14-10069 (April 13, 2017)," and his sentence is unreasonable and violates the factors set forth in 18 U.S.C. § 3661 and 18 U.S.C. § 3553. (Doc. No. 1 at 10, "Ground Seven");

(8) The district court erred when it allowed the prosecutor to cross-examine Petitioner during allocution in violation of his Fifth Amendment right to due

process, and his appellate counsel failed to raise this issue on direct appeal on his direct appeal. (Doc. No. 1 at 10, "Ground Eight");

(9) Petitioner received ineffective assistance of counsel during trial and post-conviction proceedings in violation of his Sixth Amendment right. (Doc. No. 1 at 10, "Ground Nine").

On October 15, 2018, Petitioner, through counsel, filed an Amended Petition which adopted all arguments made in the original Petition, and supplemented Petitioner's argument as to Ground Two. (Doc. No. 10).

The Government filed the Response arguing that Petitioner's Petition should be denied because it is barred by the applicable statute of limitations. (Doc. No. 12 at 7-9).[2] Alternatively, the Government argues that the Petition should be denied because none of his proffered grounds for relief are meritorious. (*Id.* at 9-33). Petitioner, through counsel, filed a reply to the Government's response. (Doc. No. 18, "Reply"). After the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), the Government filed a notice with the Court conceding that relief was warranted under Ground Two. (Doc. No. 27). The Court will review each asserted ground for relief in turn.

## SECTION 2255 PROCEEDINGS

28 U.S.C. § 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

---

[2] The Court notes that when citing to a page in a document filed by one of the parties, it endeavors to cite to the page number ("Page __ of __") added by the Clerk's office as part of the pagination process associated with Electronic Case Filing if such page number differs from the page number originally provided by the author/filer of the document.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

If a factual dispute arises in a Section 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray*, 721 F.3d at 761; *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

Having reviewed the record in Petitioner's underlying criminal case, as well as the filings in this case, the Court finds it unnecessary to hold an evidentiary hearing because disposition of Petitioner's claims does not require the resolution of any factual dispute.

## ANALYSIS

### *Statute of Limitations*

The Government argues that the Petition was filed outside of the applicable one-year statute of limitations because Petitioner's conviction became final on May 30, 2017, when the Supreme Court denied his petition for writ of certiorari. According to the Government, "Petitioner had until May 30, 2018, in which to file the instant motion [and] the Petition in this case was filed on September 4, 2018, three months after the statute of limitations period." (Doc. No. 12 at 7). Thus, the Government maintains (except insofar as it now concedes that relief is warranted on Ground

Two, based on *Davis*, irrespective of any timeliness issues) that the relief sought via the Petition should be denied because the Petition is untimely. Petitioner responds that the Petition is timely because it was filed within one year of the "the time to appeal the *amended* judgment expired and his conviction became final[.]" (Doc. No. 18 at 1) (emphasis added).

28 U.S.C. § 2255(f)(1) provides: "A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the . . . date on which the judgment of conviction becomes final." The United States Supreme Court and the Sixth Circuit have not yet answered the question of when a judgment becomes final for purposes of the Section 2255 statute of limitations in the context of a remand from a circuit court, but both have done so in other contexts.

In *Burton v. Stewart*, 549 U.S. 147 (2007), the state appellate court affirmed the petitioner's convictions but remanded for a new sentencing proceeding, and the trial court resentenced him in March 1998. 549 U.S. at 151. In December 1998, the petitioner filed an unsuccessful habeas petition challenging his conviction. In 2002, he filed another habeas petitioner challenging his new sentence. The Supreme Court denied review of the petitioner's 2002 petition because that petition was a "second or successive" petition. In denying relief, the Supreme Court rejected the petitioner's argument that he *had* to file the first petition in 1998 to prevent his claims from being time-barred. The Supreme Court explained that for purposes of Section 2244(d)'s one-year period of limitation, "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Id*. at 156. The clock thus "did not begin until both his conviction *and* sentence became final by the conclusion of direct review . . . [,] which occurred well after [the petitioner] filed his [first] petition." *Id*. at 156-157.

In *Rashad v. Lafler*, 675 F.3d 564 (6th Cir. 2012), the court, relying on *Burton*, held that,

when a state appellate court vacates a petitioner's sentence and remands for re-sentencing, the judgment of conviction "became final upon the conclusion of direct review of the new sentence he received at resentencing." 675 F.3d at 569 (citing *Burton*, 549 U.S. at 156-57).

Other circuit courts, and one district court within the Sixth Circuit, have held that the rationale in *Burton* applies to Section 2255 motions. In *United States v. Messervey*, 269 F. App'x 379 (5th Cir. 2008), the district court dismissed a Section 2255 petition as untimely, finding that because the petitioner had raised claims related only to his original conviction, the limitations period ran from the date that the original conviction became final and not from the date that the resentencing became final. The Fifth Circuit reversed and concluded that "[i]n light of *Burton*, we hold that in cases in which a defendant's conviction is affirmed on appeal but the case is remanded for resentencing, the defendant's conviction becomes final for limitations purposes . . . when [ ] both the conviction and sentence become final by the conclusion of direct review or the expiration of time for seeking such review." *Id*. at 381. Although this quote does not make the matter ideally clear, the Fifth Circuit elsewhere made plain that was referring to when the *new* sentence (the sentencing on resentencing) became final. *See id.* ("Because [the petitioner] filed his § 2255 motion within one year of the appeal from the judgment on his resentencing becoming final, his motion was timely filed. Therefore, the district court erred in dismissing the motion as time-barred."). In *United States v. Carbajal–Moreno*, 332 F. App'x 472 (10th Cir. 2009), the petitioner was found guilty of eight counts relating to drug possession and distribution. *Id*. at 473. The Tenth Circuit vacated one count, a conspiracy conviction, and remanded to the district court to "adjust the sentence accordingly." *Id*. at 475. In doing so, the Tenth Circuit discussed *Burton* and held that the petitioner's conviction did not become final until after the district court issued its judgment on

remand.[3] *Id.* Additionally, a district court within this circuit has held that "[t]he *Burton* rule applies with equal force to federal convictions and [Section] 2255 proceedings." *Gibbs v. United States*, No. 1:09-cv-402, 2010 WL 1687614, at *2 (W.D. Mich. Apr. 26, 2010).

The Court finds the above cases persuasive, and shares the same concerns regarding bifurcating a statute of limitations analysis as to a petitioner's claims that were expressed by the Sixth Circuit in *Rashad*:

> A contrary approach would require Rashad to bifurcate the claims arising from his criminal case into distinct judgments—one related to the conviction, one related to the sentence. Yet the AEDPA statute of limitations speaks of one "judgment," § 2244(d)(1)(A), not many. And *Burton* tells us the "judgment in a criminal case means sentence." 549 U.S. at 156 []. Besides splitting each criminal judgment into two, the State's approach would require petitioners to comply with different limitations clocks for each judgment and, it is worth adding, would require the State to defend two cases rather than one. That approach would not advance "AEDPA's goal of streamlining federal habeas proceedings," [] as it would force prisoners who have their convictions affirmed but their sentences vacated—a "not uncommon situation," *Burton*, 549 U.S. at 154 []—to file dual petitions. A fair reading of the language of AEDPA together with Burton does not support this approach, and neither do the decisions of any other circuits.

675 F.3d at 568 (citations omitted). Accordingly, the Court holds that when a criminal case is remanded to the district court for resentencing, a petitioner's conviction or sentence does not become final for purposes of Section 2255's statute of limitations, and thus its one-year limitations period does not begin to run, until the district court has entered an amended judgment and has been subjected to directed review (or the time for seeking such review has passed).

Here, the Sixth Circuit vacated two of Petitioner's four Section 924(c) convictions, and "remand[ed] for entry of a revised judgment and sentence." *Whitson*, 664 F. App'x at 506. The district court entered an Amended Judgment on October 5, 2017 and a Second Amended Judgment on October 16, 2017. (Case No. 3:12-cr-00013-2, Doc. Nos. 1045, 1047). Petitioner's judgment of

---

[3] Notably *Carbajal-Moreno* was cited (using the "cf." signal) by the Sixth Circuit in *Rashad* in support of its above-referenced analogous holding. *Rashad*, 675 F.3d at 568.

conviction became final, at the very earliest, on October 19, 2017—fourteen days after the entry of the first Amended Judgment.[4] Petitioner filed his Motion to Vacate on September 4, 2018, within the applicable one-year limitations period. Therefore, the Court finds that the Petition is timely.

### Ground 1: The Ex Post Facto Clause

In Ground One of the Petition, Petitioner asserts that his convictions for conspiracy to commit Hobbs Act robbery in Counts One and Five violate the *ex post facto* clause of the United States Constitution, and his Fifth Amendment due process rights. (Doc. No. 1 at 2; Doc. No. 2 at 1-9). In Petitioner's direct appeal, he argued that the Government had not proved the interstate commerce element of Hobbs Act robbery, 18 U.S.C. § 1951, beyond a reasonable doubt, and that the district court erred in instructing the jury with regards to this element. The Sixth Circuit rejected Petitioner's arguments, explaining:

> "In order to obtain a conviction under the Hobbs Act for the robbery or attempted robbery of a drug dealer," the Supreme Court has said, "the Government need not show that the drugs that a defendant stole or attempted to steal either traveled or were destined for transport across state lines. Rather, to satisfy the Act's commerce element, it is enough that a defendant knowingly stole or attempted to steal drugs or drug proceeds, for, as a matter of law, the market for illegal drugs is 'commerce over which the United States has jurisdiction.'" *Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016); *see Gonzales v. Raich*, 545 U.S. 1 (2005). The government satisfied the commerce element of the Hobbs Act because it proved that Whitson and his co-conspirators attempted to steal marijuana, cocaine, and drug proceeds. *See Taylor*, 136 S. Ct. at 2081–82.

*Whitson*, 664 F. App'x at 505.

Petitioner argues that *Taylor* "requires [a] lesser quantum of evidence to convict [Petitioner] than was required at the time that [Petitioner's] crime was alleged to have been

---

[4] This date is based on the worst-case (albeit likely accurate) assumption that the clock for the fourteen-day period to appeal, Fed. R. App. P. 4(b)(1), began running when the Amended Judgment was issued and not when it was amended again later (via the Second Amended Judgment) to correct clerical errors.

committed." (Doc. No. 2 at 9). Thus, Petitioner asserts that the Sixth Circuit's use of *Taylor* to decide his direct appeal constituted a violation of the *ex post facto* clause. (*Id*. at 1-8).

The *ex post facto* clause provides that "no State shall . . . pass any . . . ex post facto Law." U.S. Const. art. I, § 10, cl. 1. The *ex post facto* clause prohibits state legislatures from retroactively altering the definition of crimes. *O'Neal v. Bagley*, 743 F.3d 1010, 1015 (6th Cir. 2013). Put another way, it "prohibits the legislative enactment of any law that, inter alia, 'changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.'" *Ruhlman v. Brunsman*, 664 F.3d 615, 619 (6th Cir. 2011) (citing *Rogers v. Tennessee*, 532 U.S. 451, 456 (2001)). The Sixth Circuit has explained that it is "well established" that the *ex post facto* clause "does not of its own force apply to the Judicial Branch of government." *Id*. (quoting *Rogers*, 532 U.S. at 456) (internal quotation marks omitted). However, a petitioner may challenge a judicial decision on *ex-post-facto* grounds under the Due Process Clause. *Id*. at 620. "[L]imitations on *ex post facto* decision making are inherent in the notion of due process," *Rogers*, 532 U.S. at 456, and focus on "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct" *id*. at 459. When assessing whether a court's interpretation of criminal law "violates these concerns, the relevant consideration is whether that decision is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.'" *Ruhlman*, 664 F.3d at 620 (quoting *Rogers*, 532 U.S. at 462).

The Sixth Circuit's reliance on *Taylor* when determining the merits of Petitioner's direct appeal does not violate Petitioner's right to due process, because such reliance was not "unexpected and indefensible." *Taylor* was consistent with prior Sixth Circuit precedent that

existed at the time of the Indictment. In *United States v. Sease*, 659 F.3d 519 (6th Cir. 2011), decided years before *Taylor*, the Sixth Circuit noted approvingly the defendant's concession that "robbing drug dealers is a proper basis for conviction under the Hobbs Act" in the context of the interstate element. *Id*. at 526; *see also United States v. Ostrander*, 411 F.3d 684, 692 (6th Cir. 2005) ("[A]ny argument that the Hobbs Act, or Congress's Commerce Power . . . does not reach robberies that disrupt rather than promote illegal trafficking in drugs is foreclosed by the case law. . . . [I]llegal commerce counts as commerce for Hobbs Act purposes.") (citing *United States v. Marrero*, 299 F.3d 653, 653–54 (7th Cir. 2002)). Therefore, the Sixth Circuit's reliance on *Taylor* did not offend "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning," *Rogers*, 532 U.S. at 459, and Petitioner's due process argument fails.

For those reasons, any relief sought under Ground One will be denied.

### Ground Two: 18 U.S.C. § 924(c)'s Residual Clause

In Ground Two, Petitioner asserts that his multiple convictions for violation of 18 U.S.C. § 924(c) violate the Due Process Clause of the Fifth Amendment to the United States Constitution because such convictions rest on the unconstitutionally vague residual clause of 18 U.S.C. § 924(c). (Doc. No. 1 at 2; Doc. No. 10).

On March 5, 2019, Petitioner asked the Court to stay proceedings until the Supreme Court's resolution of *United States v. Davis*, in which the Supreme Court granted certiorari to resolve whether the residual clause of the "crime of violence" definition in 18 U.S.C. § 924(c)(3) is unconstitutionally vague. (Doc. No. 17). The Court granted the motion and stayed the action. (Doc. No. 20). On July 8, 2019, Petitioner moved to lift the stay after the Supreme Court issued its decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), in which the Supreme Court held that the residual clause of the definition of "crime of violence" in 18 U.S.C. § 924(c)(3) is

unconstitutionally vague. (Doc. No. 23). The Court lifted the stay and ordered the Government to file a response in light of the *Davis* decision, which it did on September 12, 2019. (Doc. No. 27, "*Davis* Response"). Petitioner replied to that response on October 25, 2019. (Doc No. 31, "*Davis* Reply").

In its *Davis* Response, the Government concedes "that conspiracy to commit a Hobbs Act robbery is not a crime of violence" and that Petitioner's two Section 924(c) convictions (Counts Two and Six, each of which is based upon a different underlying charge of conspiracy to commit a Hobbs Act robbery) must be vacated. (Doc. No. 27 at 2). But it contends that this Court can and should reinstate two other Section 924(c) convictions (Counts Four and Eight, which were based upon the underlying drug conspiracies charged in Counts Three and Seven) previously vacated by the district court after remand from the Sixth Circuit, and reissue the judgment to reflect the same sentence previously imposed by the Court in the Amended Judgment.[5] (*Id*.). In support of its argument, the Government cites *Rutledge v. United States*, 230 F.3d 1041 (7th Cir. 2000), where the Seventh Circuit concluded that a district court did have statutory authority to reinstate a vacated conviction. The Government argues:

> Consistent with the rationale of *Rutledge*, this Court in the instant case should likewise reinstate the petitioner's convictions on Counts Four and Eight. To that end, as evident from the record, the previous vacation of Counts Four and Eight essentially amounted to a pro forma exercise by the parties and in no way undercut the validity of the jury's verdict on those counts. The net effect of the reinstatement of Counts Four and Eight now would be to honor the jury's verdict and to maintain the status quo in terms of the petitioner's overall sentence. In the face of that verdict, any alleged error in the pre-*Davis* vacation of Counts Four and Eight is clearly harmless and can easily be remedied by the proposed reinstatement of the vacated convictions. Indeed, the petitioner, under the particular circumstances of this case, should not be allowed to benefit from the earlier pro forma process that resulted in the vacated counts. Moreover, a contrary finding would have the unjust effect of

---

[5] As noted above, on remand for entry of an amended judgment, the Court, consistent with the recommendation and concurrence of the parties, (Case No. 3:12-cr-00013, Doc. Nos. 1047, 1048), vacated Counts Four and Eight of the Indictment, charging respective violations Section 924(c) which were based upon the underlying drug conspiracies charged in Counts Three and Seven. (Case No. 3:12-cr-00013, Doc. No. 1047).

partially undercutting the jury's verdict, which was clearly supported by the evidence at trial, and ultimately depriving the victims in this case of the full measure of justice demanded by the egregious acts committed and led by the petitioner.

(Doc. No. 27 at 8-9).

In his *Davis* Reply, Petitioner asserts that *Rutledge* is easily distinguishable from the instant case because it involved a lesser included offense, which is not present here. Petitioner thus asserts that the Government cannot point to case law or statutory authority that grants the Court the authority to reinstate the previously vacated convictions, and he therefore asks the Court to reject the Government's request to reinstate the two vacated convictions. (Doc. No. 31).

The Government raised this exact argument when responding to Petitioner's co-defendant's Section 2255 petition. *See Vichitvongsa v. United States*, No. 3:17-CV-01329, 2020 WL 3101020, at *5 (M.D. Tenn. June 11, 2020) (Campbell, J.). In that case, United States District Judge William Campbell was "not persuaded [] that Section 2255 permits amendment of a judgment to 'reinstate' vacated convictions." *Id*. Examining the Government's reliance on *Rutledge*, Judge Campbell explained that

> The Section 924(c) convictions the Government seeks to reinstate here are not lesser included offenses of any of Petitioner's other convictions, nor are they part of "the sentencing package" challenged by Petitioner in this case. The convictions were vacated at the direction of the Sixth Circuit (and subsequent agreement of the parties) in direct appeal proceedings over three years ago. Furthermore, the Court is not persuaded the Sixth Circuit would adopt the "broad and flexible" view of Section 2255 espoused by the Seventh Circuit in *Rutledge*. Accordingly, the Court declines to "reinstate" Petitioner's previously vacated Section 924(c) convictions.

*Id*. at *6.

The Court concurs with the reasoning of Judge Campbell in Petitioner's co-defendant's case involving the same charges present here. The Court simply does not have authority to reinstate Defendant's previously-vacated convictions. And the chosen counts of dismissal were

not the Court's doing in the first place; the parties *agreed* to dismiss Counts Four and Eight, and the Government did so despite being (in the Court's view, at least) on notice that Counts Two and Six were substantially more imperiled by ongoing constitutional litigation than were Counts Four and Eight. It may be that that choice has now resulted in an unexpected and undeserved windfall for Petitioner, but in any event the Court lacks the authority to prevent that result by reinstating Counts Four and Eight. As the Court does not have authority to reinstate these convictions, the parties will be held to the consequences of their decision on which Section 924(c) counts to dismiss.

Therefore, relief will be granted to Petitioner on Ground Two. That is, the convictions and sentences on Counts Two and Six will be vacated without an offsetting reinstatement of the convictions and sentences on Counts Four and Eight, thus no convictions will remain under Section 924(c) and Petitioner shall not be subject to any mandatory minimum and consecutive sentence under Section 924(c).

### Ground Three:  Actual Innocence

In Ground Three, Petitioner asserts that he is "actually and factually innocent of his convictions" for conspiracy to possess with the intent to distribute controlled substances (Counts Three and Seven) and that therefore his convictions on these counts violate the Due Process Clause of the Fifth Amendment. First, Petitioner argues that "[t]here was but one agreement among the co-conspirators to conspire to commit Hobbs Act robbery [and] [d]espite there being only one agreement, the government charge[d] an[] additional count [of] conspiracy to possess with intent to distribute cocaine[.]" (Doc. No. 2 at 25). Therefore, Petitioner contends, his dual conspiracy convictions for intent to distribute controlled substances violate the Fifth Amendment's prohibitions against double jeopardy. (Doc. No. 2 at 25).

The Government argues that on Petitioner's direct review appeal, the Sixth Circuit already addressed Petitioner's argument with respect to the alleged multiplicity of the conspiracy charges and that a "[Section] 2255 motion may not be employed to relitigate an issue that was raised and considered on direct appeal absent highly exception circumstances, such as an intervening change in the law." (Doc. No. 12 at 22 (quoting *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999))).

On his direct appeal, Petitioner argued to the Sixth Circuit "that the government failed to prove beyond a reasonable doubt that there were 'two separate drug conspiracies and two separate conspiracies to violate the Hobbs Act.'" *Whitson*, 664 F. App'x at 506. The Sixth Circuit rejected the Petitioner's argument on direct appeal. The Court explained that "another panel of this court [addressing the appeal of Petitioner's co-defendant, Vichitvongsa] has already rejected this argument. . . . That by itself suffices to reject the argument." *Id.* (citing *Vichitvongsa*, 819 F.3d at 272-74). Nevertheless, "out of an abundance of caution," the court addressed the merits of Petitioners argument and held that "the district court did not clearly err in determining that there were two separate sets of conspiracies." *Id.* (citing *Vichitvongsa*, 819 F.3d at 273-74).

Accordingly, Petitioner's present argument has already been raised and litigated on direct appeal. Although Petitioner couches his current argument in terms of "actual innocence" his argument is "substantially identical," *DuPont v. United States*, 76 F.3d 108, 111 (6th Cir. 1996), to the argument he raised on direct appeal—*i.e.*, his challenge to the sufficiency of the evidence to support his convictions for the two drug conspiracies and the two conspiracies to commit Hobbs Act robbery. *See Wren v. United States*, No. 17-2054, 2018 WL 4278569, at *2 (6th Cir. Sept. 6, 2018) (refusing to consider an actual innocence claim that was "essentially a 'repackaged challenge' to the sufficiency of the evidence underlying [a] conviction that [had] already been considered and rejected by [the Sixth Circuit] on direct appeal"). Moreover, Petitioner has offered

no highly exceptional circumstance, such as an intervening change in the law, that would warrant this Court to revisit the issue that has already been decided by not one, but two Sixth Circuit panels. *See Whitson*, 664 F. App'x at 506; *Vichitvongsa*, 819 F.3d at 272-74; *see also Pitts v. United States*, No. 17-6116, 2018 WL 4566275, at *2 (6th Cir. Apr. 3, 2018), *reh'g denied* (July 17, 2018) ("Because Pitts did not demonstrate an intervening change in the law or other exceptional circumstance that would warrant relitigation of the issues, his sentencing claims do not deserve encouragement to proceed further.").

Petitioner's invocation here of the Double Jeopardy Clause to challenge his convictions on Counts Three and Seven is likewise to no avail. It is true that the Sixth Circuit's opinion on Petitioner's direct appeal did not expressly address any double jeopardy argument in connection with Petitioner's challenges to his convictions on those counts. But inherent in the decisions of the Sixth Circuit (in Petitioner's and Vichitvongsa's case) is the conclusion that the Double Jeopardy Clause was not violated by Petitioner being convicted and sentenced on both Count Three and Count Seven; if, as those decisions state, the evidence supported a finding that Counts Three and Seven were separate conspiracies, then the evidence supported a finding that they were not the "same offense" and thus presumptively not within the scope of the Double Jeopardy Clause. U.S. CONST. amend. V ("Nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."); Eli J. Richardson, *Eliminating Double-Talk from the Law of Double Jeopardy*, 22 Fla. St. U. L. Rev. 119, 124 (1994) ("According to the Supreme Court, the Double Jeopardy Clause generally prohibits three occurrences: multiple (cumulative) punishments for the same offense, subsequent prosecutions for an offense after a conviction for the same offense, and subsequent prosecutions for an offense after acquittal for the same offense.") True, in some limited situations the Supreme Court has (counterintuitively) recognized protection for defendants under

the Double Jeopardy Clause even in situations that (on close inspection) do not actually involve two offenses that were actually the "same offense." *Id.* at 139-42. But there is no reason to believe that Petitioner's simultaneous convictions on Counts Three and Seven involve any such situation. Additionally, any double jeopardy claim is not properly characterized as an assertion of *actual innocence*. The double jeopardy clause has multiple specific purposes, *id.* at 128-29, but protecting defendants who are actually innocent *because* they are actually innocent is not one of them, and a defendant who suffers a double jeopardy violation is by no means necessarily actually innocent.

Taking a different tack to assert actual innocence, Petitioner also argues that at trial, the Government did not offer evidence that would show that he was a party to the conspiracies charged in Counts Three and Seven, that he even had any knowledge that these conspiracies existed, or that he possessed an intent to enter into these conspiracies. Therefore, he claims, he is "actually and factually innocent" of the crimes charged in these two counts. (Doc. No. 2 at 28-30). Although Petitioner raised a sufficiency-of-the-evidence challenge to these convictions on direct appeal, it was not presented there as it is presented here, but rather (as indicated above) as a challenge to the sufficiency of the evidence that there were two different drug conspiracies (as opposed to a single drug conspiracy). So out of an abundance of caution, the Court will consider the sufficiency-of-the-evidence argument as it is presented here. However, Petitioner's challenge fails because "challenges to the weight or credibility of the evidence do not establish innocence, and claims of insufficient evidence short of establishing actual innocence will not be reviewed in a § 2255 proceeding." *Goward v. United States*, 569 F. App'x 408, 411–12 (6th Cir. 2014) (citing *Zack v. United States*, No. 93–2493, 28 F.3d 1215, 1994 WL 284088, at *3 (6th Cir. 1994)). In other words, it is one thing for a petitioner to claim that the prosecution lacked evidence to show guilt, and it is another thing to claim (let alone show) that the petitioner was actually innocent. Therefore,

Petitioner's claim of "actual innocence" as to the conspiracy charges in Counts Three and Seven fails, and Petitioner will not be granted relief under Ground Three.

### Ground Four: Prosecutorial Misconduct

In Ground Four, Petitioner contends that the Government violated his Fifth Amendment due process right by engaging in prosecutorial misconduct. Petitioner contends that prosecutors withheld favorable evidence and presented falsified evidence and perjured testimony. (Doc. No. 2 at 5). Petitioner alleges specific four instances of prosecutorial misconduct:

A. Failure to Provide Favorable Evidence

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court introduced the notion of a so-called *Brady* violation, holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is *material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 86 (emphasis added). The Sixth Circuit has explained the notion of "material" in this context as follows:

> To determine whether nondisclosure of exculpatory evidence resulted in an unfair trial, we assess whether the evidence was "material" to a defendant's case. Evidence is material under *Brady* if there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L.Ed.2d 481 (1985). "Reasonable probability" is defined as "probability sufficient to undermine confidence in the outcome." *Id.* The court must review the trial record and decide whether it remains confident that the outcome would be the same even if the jury heard the suppressed evidence. *See Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 131 L.Ed.2d 490 (1995) ("The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."). If consideration of the additional evidence shakes the court's confidence in the verdict, a new trial should be ordered even if there remains sufficient evidence to sustain a conviction. *See Strickler* [*v. Greene*], 527 U.S. [263,] 290 [(1999)], 119 S. Ct. 1936 ("[T]he materiality inquiry is not just a matter of determining whether ... the remaining evidence is sufficient to support the jury's conclusions."); *United States v. Agurs*, 427 U.S. 97, 112, 96 S. Ct. 2392, 49 L.Ed.2d 342 (1976) ("[T]he omission must be evaluated in the context of the entire record.").

*United States v. Tavera*, 719 F.3d 705, 712-13 (6th Cir. 2013).

Of the four alleged instance of prosecutorial misconduct, three involve so-called *Brady* claims*, i.e.,* alleged *Brady* violations. First, Petitioner alleges that the Government failed to produce the pretrial identifications of Petitioner. Specifically, Petitioner argues that the Government did not turn over any pretrial identification evidence (despite a discovery request to do so) and was aware that its lead case agent (1) stated in its investigative report "that his source had identified [Petitioner] out of a photo display" and (2) testified at the preliminary hearing that Petitioner "was observed and identified on channel 4 news after [Petitioner's] arrest [] by one of the victims[.]" (Doc. No. 2 at 32-33). Petitioner argues that "the pretrial identifications [were] exculpatory evidence that [Petitioner] could have presented to show that the victims had previously identified someone else and maybe exonerated [Petitioner]." (*Id*. at 34). Petitioner has not alleged any facts to suggest that disclosure of these pretrial identifications would have revealed that the victims had in fact previously identified someone else. Instead, Petitioner merely surmises that these pretrial identifications could have "maybe exonerated" Petitioner. The Court will not rely on such speculation, and thus the Court finds that Petitioner has failed to demonstrate how this information would have been material.

Next, Petitioner argues that the Government refused to turn over its lead agent's "rough notes" and "grand jury testimony" that its case agent presented to the grand jury. Petitioner contends that these statements were material to Petitioner's cross-examination of the Government's witnesses regarding their prior statements which were inconsistent with their trial testimony. (*Id*. at 34-35). Petitioner does not point out what information he believes is inconsistent with the agent's trial testimony. Thus, again, the Court will not rely on such speculation, and thus,

the Court finds that Petitioner has failed to demonstrate how this information would have been material.[6]

Petitioner next asserts that the Government refused to provide Petitioner with "any and all scientific drug analysis reports obtained through its investigation" despite being aware that its lead case agent testified at the preliminary hearing that "remnants of marijuana" were located in the driveway of the location of a robbery. (*Id*. at 35). Even assuming such scientific drug analysis reports existed, Petitioner fails to demonstrate how these reports would have been material.

Whether considered individually or cumulatively, the alleged *Brady* violations have not been shown in any way to be material, and thus do not afford Petitioner grounds for relief.

---

[6] To the extent that Petitioner's claim here is that the Government withheld information that would have served to impeach one or more Government witnesses (as opposed to serving to exonerate him more directly), his claim may fall into a subset of *Brady* claims known as *Giglio* claims. "Pursuant to *Giglio,* when the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting the credibility of that witness may require a new trial, irrespective of the good faith or bad faith of the prosecution. However, a new trial is not automatically required whenever a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense." *United States v. Koubriti*, 297 F. Supp. 2d 955, 961 (E.D. Mich. 2004). A *Giglio* claim is one that asserts a nondisclosure of evidence affecting the credibility of a prosecution witness.

Like a Brady claim, a *Giglio* claim would require Petitioner to establish that the withheld information was material. *See United States v. Rosse*, 716 F. App'x 453, 465 (6th Cir. 2017) ("To establish a violation of *Brady* or *Giglio*, a defendant must show that the prosecution had favorable and material evidence in its control and failed to disclose it." (citing *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972))). In other words, "[t]o prevail on either type of claim, a habeas petitioner must make a showing of prejudice." *Davis v. Gross*, No. 18-5406, 2018 WL 8138536, at *2 (6th Cir. Sept. 10, 2018).

> [T]he prejudice requirement under *Brady* is more stringent than that under *Giglio*. To show prejudice under *Brady*, a petitioner must demonstrate that "there is a reasonable probability that, had the [suppressed] evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) ). To show prejudice under *Giglio*, however, a petitioner must demonstrate only that "there is [a] reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Agurs*, 427 U.S. 97, 103 (1976).

*Id*. But even if Petitioner here is making a *Giglio* claim, it would fail because he has not shown that any Government witness testified falsely at all, let alone that any withheld information would have revealed that fact, let alone that any false testimony likely could have affected the judgment of the jury.

B. Use of Perjured Testimony

The law is well-settled that to vacate a sentence on the grounds of perjured testimony, the petitioner must prove not only that his trial involved perjured testimony but also that the false statements were material and that the prosecuting officials at the time the testimony was used knew that it was perjured. *See, e.g., United States v. Bagley*, 473 U.S. 667, 679-80 (1985); *United States v. Farley*, 2 F.3d 645, 655 (6th Cir. 1993).

Petitioner's final assertion of prosecutorial misconduct is that the Government allowed its lead case agent at the preliminary hearing to commit perjury by testifying that his sources were not Petitioner's co-conspirators, when in fact they were. (Doc. No. 28 at 34). Even assuming in Petitioner's favor that this testimony was in fact perjured, the Court fails to see how this testimony would have been material to Petitioner's guilt.

Accordingly, Petitioner's prosecutorial misconduct claim fails on the merits, and relief will not be granted to Petitioner on Ground Four.[7]

### Ground Five, Six, and Eight: Procedurally Defaulted Claims

In Grounds Five, Six, and Eight, Petitioner raises several grounds for relief that he did not raise on direct appeal. He asserts in conclusory fashion that failure to raise these claims was due to ineffective assistance of appellate counsel. In the Response, the Government argues that Petitioner has not demonstrated that his appellate counsel was ineffective for not presenting these

---

[7] The Court notes that this claim likely is procedurally defaulted, but the Court will not rely on that as a basis for its denial of relief under Ground Four because the Government did not raise procedural default of Petitioner's prosecutorial misconduct claim as a defense. *See Poulsen v. United States*, 717 F. App'x 509, 517 (6th Cir. 2017) (affirming lower court's finding that movant could not raise a claim of prosecutorial misconduct in a Section 2255 motion where the defendant had failed to raise the issue previously, resulting in the claim being procedurally defaulted); *Goward*, 569 F. App'x 408, 411 (6th Cir. 2014) (affirming lower court's finding that movant could not raise a claim of prosecutorial misconduct in a Section 2255 motion where the defendant had failed to raise the issue in his criminal case or on direct appeal, resulting in the claim being procedurally defaulted).

claims; thus, the Government asserts that Plaintiff may not bring these claims now. (Doc. No. 12 at 31-32).

Generally, when a defendant fails to raise an issue at sentencing or on direct appeal, that issue is waived. *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000). However, a defendant may pursue waived claims through a collateral attack under section 2255 when he can demonstrate cause and prejudice to excuse his default. *Id*. "Ineffective assistance of counsel can constitute cause for a procedural default." *Hodges v. Colson*, 711 F.3d 589, 602 (6th Cir. 2013). Therefore, for the Court to review Petitioner's claims that were not raised on direct appeal, he must establish that his appellate counsel was ineffective for failing to raise those issues. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (explaining that ineffective assistance of counsel may constitute good cause for excusing procedural default).

To prove ineffective assistance of appellate counsel, a petitioner must show both deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, (1984). Notably, appellate "counsel has no obligation to raise every possible claim and the decision of which among the possible claims to pursue [on appeal] is ordinarily entrusted to counsel's professional judgment," and "[c]ounsel's performance is strongly presumed to be effective." *McFarland v. Yukins*, 356 F.3d 688, 710 (6th Cir. 2004) (citations omitted). "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003). "The decision of which among the possible claims to pursue on appeal is entrusted to counsel's professional judgment, which is presumed to be effective unless the ignored issues are clearly stronger than those presented." *Sullivan v. United States*, 587 F. App'x 935, 942 (6th Cir. 2014) (citation omitted).

Petitioner does not explain how appellate counsel's failure to raise these issues on appeal constituted deficient performance, or how he was prejudiced from the failure of appellate counsel to raise these issues on appeal. Indeed, he does not mention the alleged ineffectiveness of appellate counsel at all in his eighty-page Memorandum. And although he has not even attempted to do so, the Court notes that his battle to do so would have been an uphill one, as the Supreme Court has explained that the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quotation marks omitted); *see also Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) ("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."). Thus, because Petitioner has not satisfied either *Strickland* requirement in regard to his appellate counsel's alleged failure to raise the issues in Ground Five, Six, and Eight on appeal, these grounds are procedurally defaulted.[8]

### *Ground Seven: Resentencing in light of Dean v. United States*

In Ground Seven, Petitioner argues that he should be resentenced in light of *Dean v. United States*, 137 S. Ct. 1170 (2017), alleging that his sentence is unreasonable and violates the factors set forth in 18 U.S.C. § 3661 and 18 U.S.C. § 3553. In *Dean*, the Supreme Court held that a sentencing court may, when determining an appropriate sentence for the predicate offense(s) underlying a conviction under Section 924(c), consider the fact that a mandatory minimum sentence is being imposed (simultaneously) under Section 924(c). 137 S. Ct. at 1175-78. The

---

[8] Actual innocence may also constitute cause for a procedural default. However, as discussed above, Petitioner's "actual innocence" argument is flawed in part because it is not one of actual innocence, but rather a challenge to the sufficiency of the evidence. Accordingly, Petitioner has not established actual innocence to excuse his procedural default.

general idea is that the district court may consider whether the existence of the mandatory minimum sentence imposed on the Section 924(c) charge is grounds for reducing the consecutive sentence on the predicate count(s) of conviction when considering an appropriate overall, cumulative sentence.

Petitioner asserts that "[n]ormally, of course, a district court enjoys considerable discretion when it comes to picking a prison term within the applicable statutory range. But at the government's urging in this case the district court decided there was one set of facts that it had to disregard [Petitioner's] § 924(c) firearm convictions and the lengthy sentence it just imposed for them." (Doc. No. 2 at 58). In its Response, the Government argues that this ground should be rejected, because *Dean* has not been made retroactive to cases on collateral review. (Doc. No. 12 at 23).

The Sixth Circuit has held, for reasons the Court need not detail here, that "*Dean* does not apply retroactively to cases on collateral review." *Harper v. United States*, 792 F. App'x 385, 394 (6th Cir. 2019), *cert. denied*, 141 S. Ct. 166, 207 L. Ed. 2d 1101 (2020). So the sentencing court's alleged failure to take to heart the lessons of *Dean* is not grounds for relief.

Moreover, as indicated herein, by virtue of this order, no Section 924(c) convictions or sentences will remain. So Petitioner's apparent point here—that his sentence on the predicate counts should have been reduced, under the principle of *Dean*, because he was already receiving lengthy mandatory and consecutive minimum sentences under Section 924(c)—would not apply on re-sentencing. That is, if Petitioner is asserting that his sentence must take account of the sentences under Section 924(c), that assertion has become irrelevant because he no longer will have any sentences under section 924(c), and his sentences on remand need not account for any sentences under section 924(c).

Accordingly, relief under Ground Seven will be denied.

### Ground Nine: Ineffective Assistance of Trial Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland*, 466 U.S. at 687. Under the *Strickland* standard for proving ineffective assistance of counsel, as discussed above, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if

a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Court scrutiny of defense counsel review must be "highly deferential." *Id.* at 689. Decisions that "might be considered sound trial strategy" do not constitute the ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the [ultimate] judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691), *quoted in Smith v. Jago*, 888 F.2d 399, 404-05 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *Morrow*, 977 F.2d at 229.

Petitioner has asserted myriad claims regarding his counsel's alleged ineffectiveness that the Court will review in turn.

1. Counsel Introduced Testimony of Gang Related Activity

Petitioner contends that his trial counsel elicited testimony regarding Petitioner's gang activity and that this testimony tainted Petitioner in the eyes of the jury. (Doc. No. 2 at 61-63). Petitioner points to the trial transcript where Defendant's counsel asked Petitioner's co-conspirator: "Were you and Nelly ever associated, involved in something called the Asian Pride Gang?" and the co-conspirator answered eventually "I knew him being in Asian Pride." (*Id*. at 62).

It is clear from the record that Nelly refers to another of Petitioner's co-conspirators, Manila Vichitvongsa, not Petitioner. (Case No. 3:12-cr-00013, Doc. No. 927, at 10 ("Q. And when

you say Nelly, is that Manila Vichitvongsa? A. Yes, sir.")). Petitioner does not explain how counsel's act of eliciting testimony that a co-conspirator was in a gang implicated Petitioner in gang activity, or otherwise negatively reflected on Petitioner, so that it constituted ineffective assistance of counsel. And "how to conduct a witness' testimony [is a] classic question[] of trial strategy that merit[s] *Strickland* deference." *Rayborn v. United States*, 489 F. App'x 871, 878 (6th Cir. 2012). Based upon the scant information provided, Petitioner has not alleged sufficient facts to support a claim that his counsel committed an error of constitutional magnitude, or that he was prejudiced from any alleged error. *Strickland*, 466 U.S. at 695 ("[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

### 2. Counsel Failed to Investigate Selected Jurors

Petitioner asserts in conclusory fashion that the "Jury Voir Dire list" shows "manifest signs of conflicts of interest" and "surely . . . counsel should have further investigated the selected jurors' backgrounds to ensure Petitioner a [sic] impartial jury and fair trial." (Doc. No. 2 at 63). Petitioner points to two specific potential jurors that he alleges had conflicts of interest. (*Id.*). He then cites to the portion of trial transcript where the presiding judge *excused* these jurors from the jury panel. (*Id.*). Because these potential jurors were not included on the jury panel Petitioner cannot show he was prejudiced in any way from these alleged juror conflicts of interest. Nor has he adequately identified what information that he alleges his counsel should have investigated further. Accordingly, Petitioner has not alleged sufficient facts to support this claim of ineffective assistance of counsel.

3. Counsel Failed to Object to Term "Home Invasion"

Next, Petitioner complains that his trial counsel failed to object to the term "home invasion" used by the Government throughout Petitioner's trial. Petitioner asserts that the Government's use of "home invasion" allowed the Government "to constructively amend the indictment in which [Petitioner] was charged." (Doc. No. 2 at 64). Petitioner contends that "as a result . . . there was a substantial likelihood that the jury convicted [Petitioner] of 'home invasion' robbery rather than Hobbs Act robbery as charged in the [I]ndictment." (*Id*.). Thus, according to Petitioner, his counsel's failure to object to the term constituted ineffective assistance of counsel.

The Court easily rejects Petitioner's argument. First, a counsel's choice not to object is part of counsel's trial strategy that is subject to *Strickland* deference. *See Strickland*, 466 U.S. at 695. Petitioner's trial counsel's decision not to object to the term "home invasion" falls squarely in that category. Additionally, Petitioner has not shown how he was prejudiced by the Government's use of the term "home invasion." A "constructive amendment" of the indictment occurs when terms of the indictment are in effect altered by the presentation of evidence *and* the jury instructions which modify essential elements of the offense charged. *See United States v. Kuehne*, 547 F.3d 667, 685 (6th Cir. 2008) ("This court has held that a constructive amendment occurs where both the jury instructions and the evidence at trial vary from the indictment to broaden the basis for conviction."). Here, the jury instructions clearly lay out the elements of Hobbs Act robbery, the crime charged in the Indictment. (*See* Case No. 3:12-cr-00013-2, Doc. No. 929 at 127). This reality is in no way refuted by the fact that the prosecutor used the term, "home invasion." Therefore, there was no constructive amendment in any event, and Petitioner has failed to show how he was prejudiced by any alleged error of his trial counsel in failing to object to the use of the term. Accordingly, this claim of ineffective assistance of counsel is rejected.

4. Counsel Failed to Object to the Government and its Witnesses' Reference to Suppressed Evidence

Petitioner argues that his trial counsel was ineffective in failing to object to the Government and its witnesses' reference to what Petitioner calls "suppressed evidence." But, as Petitioner himself notes, the Court denied Petitioner's motion to suppress and did not suppress any evidence. (Doc. No. 2 at 66). Thus, Petitioner cannot show a constitutional deficiency in his trial counsel's performance, nor resulting prejudice, in failing to object to references to what Plaintiff for some reason calls "suppressed evidence." The Court thus rejects this claim of ineffective assistance of counsel.

5. Counsel Failed to Request a Mistrial

Petitioner contends that his trial counsel's failure to request a mistrial amounted to ineffective assistance of counsel because during the trial Petitioner "was falsely accused as being the perpetrator by two of the victims testifying on behalf of the government." (Doc. No. 2 at 68). He further contends that this failure prejudiced him "at trial as the jury may have convicted [Petitioner] based on these false accusations and identifications." (*Id*.).

Petitioner's claim is without merit. In support of his assert that he was "misidentified" he cites conflicting testimony that occurred at the trial. (*Id*. at 69-71). However, conflicting testimony is not uncommon at trial, and it is the role of the jury to determine the credibility of witnesses and weigh their testimony accordingly. *See United States v. Thomas*, 467 F.3d 49, 55 (1st Cir. 2006). Indeed, in analyzing the trial transcript, it is difficult to imagine the trial judge responding favorably to such a motion for a mistrial on these grounds, considering the other overwhelming evidence of Petitioner's guilt. Absent extraordinary circumstances, the remedy for a defendant who contends he has been falsely implicated by a witness is not a mistrial; it is, instead, resort to things like cross-examination and closing argument to the jury. Thus, Petitioner has not shown any

error of a constitutional deficiency, or any resulting prejudice from the alleged error of his trial counsel. The Court rejects this claim of ineffective assistance of counsel.

6. Counsel Failed to Subpoena Favorable Witnesses

Petitioner argues that his trial counsel was ineffective in failing to call several witnesses that Petitioner believes would have been favorable to his defense. However, there is nothing before the Court to suggest that this constituted ineffective assistance of counsel. As noted above, "[w]hether to call a witness and how to conduct a witness' testimony are classic questions of trial strategy that merit *Strickland* deference." *Rayborn*, 489 F. App'x at 878. Petitioner has provided nothing to overcome that deference to demonstrate an error of constitutional magnitude. Nor has Petitioner asserted that introducing the testimony of these witnesses may have changed the outcome of his trial; therefore, he has not shown that he the requisite prejudice from these alleged errors. *See Bradford v. United States*, 520 F. Supp. 3d 991, 1002-03(M.D. Tenn. Feb. 16, 2021) (rejecting a petitioner's claim that his counsel's failure to call witnesses that he believed were favorable to his case amounted to ineffective assistance of counsel). The Court rejects this claim of ineffective assistance of counsel.

7. Counsel's Concessions Amounted to Admitting Guilt

Petitioner argues that his counsel was ineffective because his counsel refused to present the defense theory urged by Petitioner, namely that "[h]e did not commit the said robberies, nor was he present for the said robberies." (Doc. No. 2 at 73). Petitioner further argues that his counsel instead made "concessions that amounted to admitting guilt" when his counsel made comments at the trial like: "Nobody is contesting whether or not there was [sic] two robberies" and "[n]obody is contesting whether people got hurt . . . it happened and it happened in this community." (*Id.* at

74). Petitioner contends that prejudiced can be presumed in this scenario as his counsel made concessions regarding Petitioner's guilt to the jury. (*Id*. at 77).

Upon review of the cited portions of the trial transcript, the Court disagrees that Petitioner's counsel made "concessions of guilt" throughout the trial. Petitioner has pointed to concessions that *crimes occurred* and that they *affected victims*, not concessions that Petitioner was guilty. And his counsel's decision to not proceed with Petitioner's suggested trial strategy falls within his counsel's sound discretion over tactical decisions during trial. *See Jones*, 463 U.S. at 751 (holding that an indigent defendant does not have a constitutional right to press issues, even if non-frivolous, which counsel in his professional judgment decides not to present); *see also Rhodes v. United States*, 443 F. Supp. 2d 893, 903-04 (N.D. Ohio 2006) ("Trial counsel's tactical decisions are not completely immune from Sixth Amendment review, but they must be particularly egregious before they will provide a basis for relief." (citing *Martin*, 744 F.2d at 1249)).

The particular strategy of which Petitioner complains here is a common one: admit that a crime occurred, express regret that members of the community were hurt by the crime, and then argue that the defendant did not commit the crime. This strategy costs the defendant little where there is little doubt anyway that the crime occurred and that the real issue is the identity of the perpetrator(s), and it can benefit the defendant substantially by gaining credibility with the jury (by making reasonable concessions), focusing the jury on the real issue in the case (the identity of the perpetrator), and, relatedly, helping ensure that the jury understands it should not convict the defendant just because the crime undisputedly was committed and the defendant happens to have been charged with it. Petitioner has done absolutely nothing to show that his counsel's choice was not a reasonable one considering the possible advantages and disadvantages of this strategy.

Accordingly, the Court rejects this claim of ineffective assistance of counsel.

8. Counsel Failed to Object to Admitted Testimony of Forensic Examiner

Petitioner argues that his trial counsel was ineffective in failing to object to the expert testimony provided by a firearm and toolmark examiner under Federal Rule of Evidence 702. (Doc. No. 2 at 77). Petitioner asserts that firearm and toolmark "analysis has recently come under attack for depending on [] subjective judgment, rarely using control weapons, and risking an observer effect." (*Id*. (citing *United States v. Taylor*, 704 F. Supp. 3d 1192, 1199-1200 (D.N.M. 2009))). According to Petitioner, his counsel's failure to object to this testimony prejudiced him at trial because "they jury may have convicted him under the observer affect [sic] of this testimony." (*Id*.).

In *Taylor*, cited by Petitioner, the court reviewed whether the opinion of a proffered expert on the unreliability of firearm and toolmark identification was admissible pursuant to Rule 702. *Taylor*, 702 F. Supp. 3d at 1199. The court found that the expert's opinion on the (lack of) accuracy of firearm identification was inadmissible because the expert's opinion was "not sufficiently reliable to meet the standards set out by Rule 702" finding that the expert misrepresented pertinent data in her study. *Id*. Thus, Petitioner's citation to *Taylor* does not support his argument that his counsel was ineffective in failing to object to the firearm identification expert's testimony; if anything, it suggests that the substance of the kinds of attacks on firearm and toolmark identification on which he relies is not necessarily reliable. On the other hand, as one district court pointed out, "[n]umerous courts across the country have conducted thorough analyses of the reliability of toolmark identification with firearms [and it] appears that in every instance, the court determined that expert testimony on toolmark analysis was admissible." *United States v. Black*, No. CR 14-364 (RHK/FLN), 2015 WL 13660442, at *5 (D. Minn. Aug. 21, 2015) (citing *United States v. Otero*, 849 F. Supp. 2d 425 (D.N.J. 2012); Taylor, 663 F. Supp. 2d at 1170; *United States*

*v. Ashburn*, No. 11–cr–303, 2015 WL 739928 (E.D.N.Y. Feb. 20, 2015); *United States v. Willock*, 696 F. Supp. 2d 536 (D. Md. 2010); *United States v. Sebbern*, No. 10–cr–87, 2012 WL 5989813 (E.D.N.Y. Nov. 30, 2012)). Nor has Petitioner shown that counsel's failure to object was prejudicial to Petitioner in that such an objection actually would have been sustained had counsel made it.

Accordingly, the Court finds that counsel's failure to object to the firearm identification expert's testimony does not reflect deficient performance, and the Court rejects this claim of ineffective assistance of counsel.

9. Counsel Elicited Other Acts Testimony from the Government's Witnesses

Petitioner argues that his counsel was ineffective in eliciting certain testimony from his co-conspirators during trial. (Doc. No. 2 at 77-78). Specifically, Petitioner points to his counsel's questions posed to Petitioner's co-conspirator regarding the co-conspirator's participation in a prior robbery and his drug dealing activities. (*Id*. at 78). Petitioner argues that he was prejudiced from this testimony because "the jury *may* have convicted" him essentially because the jury assumed that if his co-conspirator's participated in those activities, then he did too. (*Id*.) (emphasis added).

Petitioner's claim is without merit. Counsel's decision to elicit testimony about the criminal acts of an alleged coconspirator is consistent with counsel's trial theory that persons other than Petitioner committed the underlying offense. This decision to focus on the criminality of others can be viewed as counsel's strategic trial decision, and therefore, subject to high deference. *See Strickland*, 466 U.S. at 689. Accordingly, Petitioner's alleged facts do not show an error of counsel, let alone one of constitutional magnitude. Moreover, his contention that they jury *may* have convicted him based on an assumption that the jury associated Petitioner with these activities is

simply too speculative to show prejudice. Thus, this claim of ineffective assistance of counsel is rejected.

10. Counsel's Failure to Investigate

Petitioner, in a conclusory fashion, alleges that his counsel was ineffective in failing to investigate three different categories of physical evidence found at the scene of one or both of the robberies: (1) exculpatory DNA evidence; (2) latent prints found at the residence; and (3) microanalysis shoe impressions left by the assailants at the scene of the crime. (Doc. No. 2 at 79-80). "To establish that an attorney was ineffective for failure to investigate, a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005). Petitioner fails to allege with specificity what would have been revealed from additional investigation, instead simply alleging in conclusory fashion that additional investigation may have changed the outcome of the trial. This is actually quite unlikely, because even if the referenced physical evidence had been pursued, at best they would have suggested only that one or more other persons were involved in one or both robberies; this would be of strikingly limited value in showing that Petitioner was not also on-site and involved in robberies that the evidence clearly showed involved far more than one perpetrator.

This claim of ineffective assistance of counsel is rejected.

11. Counsel Failed to Object to Certain Testimony

Petitioner argues that his counsel was ineffective in failing to object to the Government's presentation of trial testimony that went "beyond the scope" of trial testimony at Petitioner's co-conspirator's trial. (Doc. No. 2 at 80). Petitioner fails to cite a legal basis for his claim that it was improper for the Government to use a wider scope of testimony at his trial than at the trial of his

coconspirator. Thus, he has not shown that his counsel's alleged failure to object to such testimony was in error. This claim of ineffective assistance of counsel is rejected.

12. Counsel Failed to Ask for a Judicial Recusal

Finally, Petitioner asserts that his counsel was ineffective in failing to ask for a judicial recusal. (Doc. No. 2 at 80-81). Petitioner contends that a judicial recusal was warranted, because the trial judge demonstrated a bias when he commented that he "fully expected [Petitioner's wife] to testify" and the trial judge "selected a juror" who worked for the United States Attorney's Office. (*Id.*).

Petitioner does not explain how the trial judge's comment (made out of the presence of the jury) regarding his expectation that Petitioner's wife would testify reveals that the trial judge was biased, as Petitioner contends. And the Court has reviewed the trial transcript and cannot see how this comment reveals any bias on the part of the trial judge. The trial judge's statement that he "fully expected [Petitioner's wife] to testify" was merely an observation made when discussing the Government's witness list. (Case No. 3:12-cr-00013, Doc. No. 926 at 21). Thus, Petitioner's counsel did not commit error in failing to move for judicial recusal after the comment was made.

Moreover, Petitioner's contention that the trial judge "selected a juror" who worked for the United States Attorney's Office is completely refuted by the record that demonstrates this potential juror was *excused* from the jury panel during voir dire. (Case No. 3:12-cr-00013, Doc. No. 926 at 12). Accordingly, Petitioner has not demonstrated how his counsel's failure to ask for judicial recusal was error, and this claim of ineffective assistance of counsel is rejected.

**CONCLUSION**

For the reasons set forth above, Petitioner's request for Section 2255 relief will be granted in part, and denied in part without the need for an evidentiary hearing. Relief will be granted as to

Petitioner's Ground Two based on the Government's concession "that conspiracy to commit a Hobbs Act robbery is not a crime of violence" and that Petitioner's two Section 924(c) convictions (Counts Two and Six, which are based upon underlying charges of conspiracy to commit a Hobbs Act robbery) must be vacated. (Doc. No. 27 at 2). Relief on all other grounds will be denied.

An appropriate order will be entered.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE